## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK BARTOL** | : | |
| **453 Strocks Grove Road** | : | **CIVIL ACTION** |
| **Upper Black Eddy, Pennsylvania 18972,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **OFFICER ADAM BARROWCLOUGH,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Tinicum Township Police* | : | |
| *Department* | : | |
| **235 Putcan Avenue** | : | |
| **Essington, Pennsylvania 19029,** | : | |
| | : | |
| **OFFICER SHAWN RYAN,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Tinicum Township Police* | : | |
| *Department* | : | |
| **235 Putcan Avenue** | : | |
| **Essington, Pennsylvania 19029,** | : | |
| | : | |
| **OFFICER ANDREW O'NEILL,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Tinicum Township Police* | : | |
| *Department* | : | |
| **235 Putcan Avenue** | : | |
| **Essington, Pennsylvania 19029,** | : | |
| | : | **Jury Trial Demanded** |
| **CHIEF STEPHEN EDMISTON,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Tinicum Township Police* | : | |
| *Department* | : | |
| **235 Putcan Avenue** | : | |
| **Essington, Pennsylvania 19029,** | : | |
| | : | |
| | : | |

**JOHN/JANE DOE #1 – X,**                                    :
*Individually and in their official capacity as*            :
*members of the Tinicum Township Police*                    :
*Department*                                                 :
**235 Putcan Avenue**                                        :
**Essington, Pennsylvania 19029,**                           :
                                                             :
**TINICUM TOWNSHIP,**                                        :
**629 N. Governor Printz Blvd.**                             :
**Essington, Pennsylvania 19029,**                           :
                                                             :
    **and**                              :
                                                             :
**BOARD OF TOWNSHIP COMMISIONERS**                          :
**OF TINICUM TOWNSHIP and**                                 :
**TOM GIANCRISTOFORO, JR.,**                                 :
**DENNIS R. ARTHUR,**                                        :
**PATRICK K. MCCARTHY,**                                     :
**LISA EDMISTON and PAT BARR,**                             :
*Individually and in their capacities as members*           :
*of the Board*                                               :
**629 N. Governor Printz Blvd.**                             :
**Essington, Pennsylvania 19029,**                           :
                                                             :
       **Defendants.**    :

## COMPLAINT

    **AND NOW COMES**, Plaintiff PATRICK BARTOL, by and through his legal counsel, Robert E. Goldman, Esquire, and does hereby allege and aver the following:

## I. JURISDICTION AND VENUE

1.   This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under

federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act", <u>as amended</u>, 42 U.S.C. §§1981, 1983, 1985 and 1988.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, §1343 (3), §1343 (4) and §1367, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3. Venue in the Eastern District is properly laid pursuant to 28 U.S.C. §1391, insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of Tinicum Township, Delaware County, Pennsylvania, in particular.

## II. <u>PARTIES</u>

4. Plaintiff Patrick Bartol is an adult individual, currently residing at 453 Strocks Grove Road, Upper Black Eddy, Bucks County, Pennsylvania, 18972.

5. Defendant Officer Adam Barrowclough (hereinafter referred to as "Barrowclough") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Tinicum Township Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and Tinicum Township.   Defendant Barrowclough was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority

and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

6. Defendant Officer Shawn Ryan (hereinafter referred to as "Ryan") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Tinicum Township Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and Tinicum Township.  Defendant Ryan was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

7. Defendant Officer Andrew O'Neill (hereinafter referred to as "O'Neill") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Tinicum Township Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and Tinicum Township.  Defendant O'Neill was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in

concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

8.   Defendant Chief Stephen Edmiston (hereinafter referred to as "Chief Edmiston") is an adult individual who, at all times relevant hereto, was a sworn member of the Tinicum Township Police Department with the rank of Chief who was/is responsible for the formulation and/or implementation of practices, policies, and procedures, discipline and assignment of officers, hiring and firing, as well as the day to day operation and overseeing and command and control of all segments of the Police Department, and who at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or township public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.  It is believed, and therefore averred that Defendant Edmiston, along with Defendant Board of Commissioners, is/were the ultimate authority for the staffing, promotions, discipline and operational functions of the Tinicum Township Police Department, with the final and unreviewable decision making authority of a policymaker.

9.   Defendant Tinicum Township is a Pennsylvania Township of the First Class with its administrative offices located at 629 N. Governor Printz Blvd., Essington, Delaware County, Pennsylvania 19029.

10.  Defendant Board of Township Commissioners of Tinicum Township is the administrative/executive body of the Township with its administrative offices located at 629 N. Governor Printz Blvd., Essington, Delaware County, Pennsylvania 19029, and by statute, 53 P.S. § 56401, appoints, and fixes the number, rank and compensation of the members of the township police force; prescribes all necessary rules and regulations for the organization of the police force; and, assigns and pays for the chief of police or any other member of the force to undergo training.  The Board is in direct supervision of the Police Department and its sworn members, and also of the selection of supervisory personnel for the Tinicum Township Police Department, who are, in turn, by and through the Board, responsible for the formulation and/or implementation of practices, policies, customs and procedures, as well as the day-to-day operation and oversight, including command and control, of all segments of the Tinicum Township Police Department.  Board of Commissioners either does, or fails to, promulgate and enforce laws, rules and regulations concerning the operations of the Tinicum Township Police Department and who at all times relevant hereto, was acting within the scope of its duties and

authority, under color or title of state or township public law or ordinance, and supervised or controlled one or more of the other Defendants herein, in their conduct or actions, or inactions, or acted in concert with them, in the performance of their conduct or actions. It is believed, and therefore averred that Defendant Board of Commissioners, along with Defendant Chief Edmiston, exercises/exercised authority over the selection, staffing, retention, training, promotions, discipline and operational functions of the Tinicum Township Police Department, with the final and unreviewable decision making authority of a policymaker.

11. At all times pertinent to this cause of action, the Board of Township Commissioners consisted of Tom Giancristoforo, Jr., Dennis R. Arthur, Patrick K. McCarthy, Lisa Edmiston and Pat Barr who, as named Defendants herein, are referred to hereinafter as the "Board of Commissioners of Tinicum Township" or the "Board".

12. Defendant John/Jane Doe #1 - X (hereinafter referred to as "Doe") is/are adult individual(s) who, at all times relevant hereto, was/were serving in their capacity as sworn officer(s), and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and Tinicum Township. Defendant Doe was/were entrusted to protect the Constitutional rights of those they encountered and at all times relevant hereto, was/were acting under the

authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance of their actions, or acted independently.

## III. <u>PRE-DISCOVERY FACTUAL ALLEGATIONS</u>

13. On February 26, 2015, Plaintiff checked into the Red Roof Inn at 49 Industrial Highway, Essington, PA, in close proximity to the Philadelphia Airport, with the intent to depart the following morning for a flight to Florida.

14. Plaintiff rented a motel room at the Inn and, therefore, was the lawful occupier of the room, with a privacy interest protected by the Fourth Amendment.

15. Shortly after midnight on February 27, 2015, Defendants Barrowclough, Ryan, and O'Neill arrived at Plaintiff's motel room, pretextually to check on the well-being of Plaintiff.

16. Upon Defendant officers' arrival, Plaintiff's motel room was dark and quiet, and Plaintiff was in bed.

17. Following Defendant officers' knocks on the door, Plaintiff opened the door, identified himself to the officers, and told the officers that everything was fine.

18. Defendant Barrowclough requested to enter the room and Plaintiff verbally denied the entry after advising the officers, again, that he was fine, that he wanted to go back to bed, and requested the officers to leave.

19. Defendant Officers refused to leave and Defendant Barrowclough stood in the threshold preventing Plaintiff from closing his motel room door.

20. When Plaintiff advised the officers that the law required a search warrant for them to enter his motel room, the Defendant Officers, led by Barrowclough, forcibly and illegally pushed their way into the room.

21. Defendant Barrowclough then forcibly threw Plaintiff against a wall in his room and immediately struck Plaintiff in the face with his fist, at least two times.

22. Defendant Barrowclough continued in his assault of Plaintiff, throwing him to the ground and continuing to strike Plaintiff.

23. Defendant Barrowclough then instructed Defendant Ryan to Taser Plaintiff, which he did, firing Taser barb's into Plaintiff's body and back, sending 50,000 volts of electrical charge into Plaintiff, multiple times.

24. At the time that the Defendant officers forcibly entered Plaintiff's room and assaulted Plaintiff, they knew that the Plaintiff had committed no criminal offense; that Plaintiff had the Constitutional right to deny their entry; and, that Plaintiff had committed no crime which could lawfully subject him to arrest.

25. Before and during the Defendant officers' assault on Plaintiff, Plaintiff did not strike or threaten any officer in any way.

26. Defendant Barrowclough has acknowledged, under oath, that Plaintiff had committed no criminal offense, had the right to deny entry by the Officers, that Plaintiff was not under arrest when the Officers forced their way into the room and began their assault on Plaintiff; and that the officers possessed no arrest or search warrant.

27. Defendants Ryan and O'Neill failed to intervene in the assault on Plaintiff by Defendant Barrowclough, and Barrowclough and O'Neill failed to intervene in Ryan's unwarranted Taser assault on Plaintiff, eventhough each of them had a realistic and reasonable opportunity to intervene in as much as both of them were within arms-reach of both Barrowclough, and Ryan, and the Plaintiff during the sustained assault upon Plaintiff.  In fact, by their mere presence, all Defendants gave authority and approval and support to the unconstitutional assault upon Plaintiff.

28. Following the illegal entry, assault, and Tasering of Plaintiff, the Defendant officers handcuffed Plaintiff's hands behind his back in an intentionally and extremely tight manner and then vigorously pulled up on Plaintiff's arms so as to inflict unnecessary and unreasonable pain upon Plaintiff.

29. Defendant Officers then picked up the handcuffed Plaintiff by his handcuffed arms behind his back and forced him down three flights of stairs at the motel, all in a manner intended to inflict, and inflicting, severe pain to Plaintiff.

30. While dragging Plaintiff to the police vehicle, Defendant Barrowclough arrogantly, and with the intent to intimidate Plaintiff, stated to Plaintiff, "welcome to Delaware County."

31. Following the assault, in a formal Criminal Complaint, Probable Cause Affidavit and official reports, Defendant officers conspired to falsely accuse Plaintiff of committing a felony aggravated assault against Defendant Barrowclough, resisting arrest, and disorderly conduct, knowing full well that Plaintiff had never struck nor resisted Barrowclough and that he, in fact, had committed no criminal offense of any kind.

32. Following Plaintiff's formal arrest, Defendants Ryan and O'Neill failed to come forward, as required by their profession, to exonerate Plaintiff, and their failure to act permitted the falsified prosecution of Plaintiff to which they conspiratorially contributed, to continue.

33. In fact, Defendants Ryan and O'Neill through their individual acts and omissions conspired with Defendant Barrowclough to actually fabricate "facts", to maliciously prosecute Plaintiff and, to conceal their Constitutional violations giving rise to this civil rights Complaint.

34. While knowing that Plaintiff had committed no criminal offense, Defendant Barrowclough effectively prevented the Delaware District Attorney's office

from disposing of the prosecution by an alternative to criminal prosecution and conviction.

35. Defendant Barrowclough testified falsely under oath at the jury trial of Plaintiff, with the intent to cover up his illegal conduct and to obtain the conviction of an innocent man.

36. Defendants Ryan and O'Neill also testified falsely at trial in an effort to assist Defendant Barrowclough in obtaining an illegal conviction, and to coverup the unconstitutional nature of Barrowclough's and Ryan's assault on Plaintiff and their alternating failure to intervene in same.

37. Defendant Officers testified falsely at trial so as to attempt to obstruct the jury's proper fact finding role.

38. Despite their perjurious testimony, on April 28, 2016, after deliberation for less than 20 minutes, the jury acquitted Plaintiff of all charges.

39. From the time of his unlawful arrest of February 27, 2015, until his acquittal on April 28, 2016, Plaintiff suffered the loss of his liberty interests, and was required to expend $15,000.00 in legal fees and costs.

40. Members of the Tinicum Township Police Department have a history of violence and Constitutional violations that were known to their police chief, Board of Supervisors and Defendant Township. This history has gone undisciplined and, in essence, the violence and Constitutional violations of

members of the Tinicum Township Police Department were condoned and encouraged by their chief, supervisors and the Township leading to the Constitutional violations complained of in this action.

41. It is believed and therefore averred that no discipline was issued by the police chief, police supervisors, or the Township regarding the unprovoked assault and clear Constitution violations committed upon the Plaintiff that night.

42. This lack of discipline is consistent with past Tinicum Township Police Department practices and further evidences that violations of citizens' Constitutional rights were not only condoned but encouraged by supervisors, policy makers and Tinicum Township itself.

43. The Tinicum Township Police Department under the guidance of its chief, and Tinicum Township provided and required insufficient training to Defendants Barrowclough, Ryan and O'Neill pertaining to the appropriate use of force and the appropriate use of a Taser employment in given circumstances, including that presented here.

44. Upon information and belief, numerous officers of the Tinicum Township Police Department routinely used excessive force in the performance of their duties.  Upon information and belief, no disciplinary action was ever taken against an officer for using excessive force, or if there was discipline, it was nominal and/or insufficient to deter future such conduct.

45. Upon information and belief, prior to the incident giving rise to Plaintiff's Complaint, no written polices existed regarding the appropriate use of force to be utilized in given circumstances commonly encountered by law enforcement.  If written policies did exist, they were insufficient, routinely ignored; and, this was accepted as the common practice of the Department and became part of its culture.

46. Despite repeated incidents/complaints of excessive use of force by the Tinicum Township Police Department, no significant efforts were made to establish or ensure appropriate use of force standards within the Police Department and/or to ensure that they were complied with.  No efforts were made to ensure citizens' Constitutional rights were not violated.  Nor has the Township, its Police Department and policy-makers taken any steps on their own to vindicate citizens' rights known to have been violated.  Instead, they have unjustly defended police officers misconduct on numerous occasions.

47. The aforesaid acts and omissions of the Defendants, or one or more of them, evidence a deliberate indifference to the rights of individuals, such as Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution.

48. At all times relevant hereto, the legal principles regarding the rights of persons, such as Plaintiff, were well established and it was not reasonable for

the Defendants to believe that their actions would not deprive Plaintiff of those rights.

49. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff as more clearly set forth in the counts below.

50. The Plaintiff did not physically resist, threaten or assault the Defendants in any way, and the force used against the Plaintiff was totally and completely unnecessary, unreasonable, excessive and outrageous.

51. At no time during the events described above was the Plaintiff a threat to the safety of himself or others.  To the contrary, he was simply and peaceably in his motel room in bed when Defendants Barrowclough, Ryan and O'Neill forcefully entered his bedroom and assaulted him.

52. Upon information and belief, Defendant supervisors and the Township administration, acting through the Board of Commissioners and Chief of Police, ignored citizens' complaints and officers' violations of citizens' Constitutional rights. In effect, supervisors and the Chief communicated to the Department and the public that any attempt to reform the Department would be ineffectual and that the custom and practice of the Tinicum Township Police Department would remain intact.

53. The Township, the Board and its Chief of Police failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and deliberate indifference to the rights and safety of others that had become the long-standing hallmark of the Tinicum Township Police Department. The Defendants herein continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by rewarding inappropriate actions, by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, training, supervision and promotions; and by reinforcing the old culture of deliberate indifference.

54. At all times during the events described above, the Defendants were engaged in a joint venture. The individual Defendants assisted each other in performing the various actions described, and lent their physical presence, support, and the authority of their office to each other during the said events.

55. As a direct and proximate result of the said acts or omissions of the Defendant officers, and by operation of law as stated hereinafter, all Defendants, the Plaintiff suffered, inter alia, one or more of the following injuries and damages all of which may be ongoing and permanent in nature;

      i. physical and mental pain and suffering, in both the past and the predictable future, including damages for physical pain, discomfort,

loss of use of bodily function, disfigurement, ill health, and emotional injuries including stigma, humiliation, fright and post traumatic distress;

ii.   compensatory damages for loss of liberty during wrongful seizure and confinement;

iii.   medical expenses, past and future;

iv.   loss of life's pleasures;

v.   impairment of personal and/or professional reputation, standing, earning capacity, and shortening of economic horizons;

vi.   attorney's fees and costs related to the underlying criminal prosecution and efforts to clear Plaintiff of wrongful prosecution;

vii.   destruction of personal property;

viii.   general damages for violation of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution; and

ix.   punitive damages (except as to the Defendants in their official capacity), which are justified factually and legally because the Defendants acted maliciously and/or wantonly in violating the Plaintiff's constitutionally (federal and state) protected rights, and

intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

56. Plaintiff further seeks counsel fees and costs including expert fees, as authorized by statute, including specifically 42 U.S.C. § 1988.

57. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff and it was unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

58. Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, he and others will suffer damages from similar Constitutional violations in the future and, accordingly requests injunctive relief as stated hereinafter.

59. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

60. While acting under color of state law, the Defendants deprived the Plaintiff of various federal Constitutional rights.

## COUNT I
### 42 U.S.C. §1983
### Unlawful Seizure
### *Against Individual Defendants*

61. The preceding paragraphs are incorporated herein by reference as though fully set forth.

62. The conduct of the Defendants constituted an unlawful seizure of the Plaintiff, within the meaning of the Fourth Amendment.

63. Said seizure was made by warrantless arrest and was unreasonable and without probable cause in that the facts and circumstances available to the Defendants would not warrant a prudent officer in believing that the Plaintiff had committed or was committing a crime which would justify his arrest.

64. Specifically, Defendants Barrowclough, Ryan and O'Neill unlawfully entered the Plaintiff's property, without a warrant and/or probable cause, and physically detained him, assaulted him, and Defendant Ryan Tased him at the direction of Barrowclough.

65. Plaintiff was subjected to this unlawful seizure and arrest in violation of the Fourth Amendment of the United States Constitution.

66. As a result of the illegal entry and unlawful seizure and arrest affected upon the Plaintiff, the Plaintiff suffered damages as stated herein.

67. Defendant Officers Barrowclough, Ryan and O'Neill are individually and jointly liable for their personal involvement in the commission of the acts complained of here.

68. Defendants, Tinicum Township, Board of Commissioners and Chief Edmiston, are liable for the acts of Defendant Officers Barrowclough, Ryan and O'Neill pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

69. Further, the conduct exhibited by subordinate township officers and employees, Barrowclough, Ryan and O'Neill, which occurred on February 27, 2015, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their township, supervisors and policymakers, Board of Commissioners and Edmiston, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations directed at individuals with whom they come in contact.

70. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

## COUNT II
### 42 U.S.C. §1983
### Excessive Force and Physical Brutality
### *Against Individual Defendants*

71. The preceding paragraphs are incorporated herein by reference as though fully set forth.

72. The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force.

73. The application of force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

74. The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested even if the arrest is otherwise proper.

75. The Defendants used excessive force in the arrest of the Plaintiff, in that, there was absolutely no need for the application of any force, and the amount of force used by the Defendants exceeded the amount of force which a reasonable officer would have used under similar circumstances.

76. No physical force of any kind was required or should have been employed.

77. The Plaintiff was simply and lawfully in his motel bedroom.

78. The Plaintiff did not present any threat to the Defendants or any other person or property.

79. Defendants Barrowclough, Ryan and O'Neill used excessive force in their encounter with the Plaintiff by using aggressive and unnecessary force likely to cause serious bodily injury when no force, or less than the force used, was necessary.

80. The use of force was not reasonable by any Defendant under the Constitution where, as here, there was no need for any force, especially the force that was used.

81. The nature and degree of excessiveness utilized against the Plaintiff by Defendants was outrageous, reprehensible, malicious, vicious, intentional, and malevolent, and clearly warrants an award of punitive and compensatory damages.

82. As a result of the excessive use of force employed against the Plaintiff in violation of his Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

83. Defendant Officers Barrowclough, Ryan and O'Neill are liable for their personal involvement in the commission of the acts complained of here.

84. Defendants, Tinicum Township, Board of Commissioners and Chief Edmiston, are liable for the acts of Defendant Officers Barrowclough, Ryan and O'Neill pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

85. Further, the conduct exhibited by subordinate township officers and employees, Barrowclough, Ryan and O'Neill, which occurred on February 27, 2015, was not unexpected.  Neither were they the deeds of independent, non-supervisory actors.  But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Board of Commissioners and Edmiston, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations.

86. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

## COUNT III
### 42 U.S.C. §1983
### False Imprisonment
### *Against Individual Defendants*

87. The preceding paragraphs are incorporated herein by reference as though fully set forth.

88. The Defendants either individually, or acting in concert, subjected the Plaintiff to false imprisonment in violation of his Constitutionally protected Fourth Amendment rights.

89. The Defendants deliberately arrested and, thereafter, deliberately further detained the Plaintiff in custody.

90. Said detention was unlawful because it lacked probable cause.

91. The facts and circumstances, which were within the knowledge of the Defendants at the time of Plaintiff's arrest, were not sufficient to warrant a

man of reasonable caution to believe that Plaintiff had committed or was committing a crime for which an arrest was authorized under the law.

92. As a result of being subjected to False Imprisonment, in violation of his Constitutionally protected rights under the Fourth Amendment, Plaintiff suffered the damages alleged herein.

93. Defendant Officers Barrowclough, Ryan and O'Neill are individually and jointly liable for their personal involvement in the commission of the acts complained of here.

94. Defendants, Tinicum Township, Board of Commissioners and Chief Edmiston, are individually and jointly liable for the acts of Defendant Officers Barrowclough, Ryan and O'Neill pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

95. Further, the conduct exhibited by subordinate township officers and employees, Barrowclough, Ryan and O'Neill, which occurred on February 27, 2015, was not unexpected.  Neither were they the deeds of independent, non-supervisory actors.  But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Board of Commissioners and Edmiston, and their joint policies, practices and customs, which operated

as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations directed at individuals with whom they have contact.

96. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

## COUNT IV
### 42 U.S.C. §1983
### Malicious Prosecution
### *Against Defendants Barrowclough, Ryan and O'Neill*

97. The preceding paragraphs are incorporated herein by reference as though fully set forth.

98. On February 27, 2015, Defendant Barrowclough initiated a criminal proceeding against Plaintiff by filing a Criminal Complaint and Probable Cause Affidavit alleging criminal violations of aggravated assault, resisting arrest, and disorderly conduct.

99. At the preliminary hearing, the Plaintiff entered a plea of not guilty to the offenses and Defendant Barrowclough thereafter presented false sworn testimony against Plaintiff.

100. The Defendants' joint prosecution of the criminal charges against Plaintiff was initiated without probable cause and perpetuated by the Defendants who acted in concert to fraudulently and knowingly pursue a false conviction of Plaintiff on serious criminal charges.

101. Said criminal charges were, in fact, totally fabricated and maliciously pursued by Defendants, in their official filings and sworn testimony in an attempt to avoid responsibility and liability for the grievous assault and constitutional violations Defendants inflicted upon Plaintiff as stated herein; and had nothing whatsoever to do with bringing the Plaintiff to justice.

102. The Plaintiff suffered a deprivation of his liberty consistent with the concept of seizure as a consequence of the legal proceeding and restraints on his liberty which followed.

103. Accordingly, Plaintiff was seized within the meaning of the Fourth Amendment and suffered a deprivation of liberty sufficient to support a claim for malicious prosecution.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally,

in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

## COUNT V
### 42 U.S.C. § 1983
### 14TH Amendment Due Process Violation
### *Against Individual Defendants*

104. The proceeding paragraphs are incorporated herein by reference as though fully set forth.

105. As stated hereinbefore, the individual Defendants Barrowclough, Ryan and O'Neill and, likely others whose identity and precise conduct cannot be known pre-discovery, engaged in the fabrication of evidence against Plaintiff, both written and oral.

106. There exists a reasonable likelihood that, absent that fabricated evidence, the Plaintiff would not have been criminally charged.

107. The fabricated evidence was so significant that it could have affected the outcome of the criminal case had the jury believed it.

108. The false writings and testimony produced by each of the individual Defendants, Barrowclough, Ryan and O'Neill, were not simply based upon disputed evidence but rather, were intentionally falsely made so as to obscure Defendants' conduct and to produce a false criminal conviction of Plaintiff.

109. Defendants Barrowclough, Ryan and O'Neill were fully aware that the Criminal Complaint, Affidavit of Probable Cause, their police reports and their sworn testimony were all intentionally incorrect and offered in bad faith.

110. Defendant Barrowclough, Ryan and O'Neill's fabrication of evidence caused Plaintiff to suffer the damages claimed hereinbefore, some or all of which may be permanent in nature.

111. Because said Defendants acted maliciously and/or wantonly in violating the Plaintiff's Constitutionally protected right to due process under law, and because they intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct in an attempt to frame a citizen and thereby undermined fundamental fairness as well as the corruption of the truth-seeking function of the trial process, and award for punitive, in addition to compensatory, damages against each of them jointly and severally (except as to the Defendants in their official capacity), is warranted.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

## COUNT VI
### Malicious Prosecution – State Violation
### *Against Defendants Barrowclough, Ryan and O'Neill*

112. The preceding paragraphs are incorporated herein by reference as though fully set forth.

113. The requirements to prove malicious prosecution under Pennsylvania law are almost identical to the federal counterpart alleged hereinbefore, except that the Plaintiff need not prove a deprivation of liberty consistent with the concept of seizure under the laws of this Commonwealth.

114. Accordingly, for the reasons set forth hereinbefore, and particularly in Plaintiff's federal Malicious Prosecution Count, Defendants are liable to Plaintiff on the state cause of action for Malicious Prosecution concerning which Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and punitive damages.

<u>**COUNT VII**</u>
**42 U.S.C. §1983**
**Supervisory Liability-Policymaker Liability**
*Against Defendants Board of Commissioners, Edmiston and Does, Individually*

115. The preceding paragraphs are incorporated herein by reference as though fully set forth.

116. At all times pertinent to the claims made herein, the Board of Commissioners and Chief Edmiston occupied both policymaking and supervisory positions relative to Tinicum Township's Police Department and the subordinate members of its force, concerning which Defendants Barrowclough, Ryan and O'Neill were officers, members and employees.

117. Generally speaking, the Township and Board of Commissioners retain ultimate responsibility over the operations of the Police Department as the administrative/executive branch of Tinicum Township, a Township of the First Class, and shares both supervisory and policymaking responsibilities with Chief Edmiston when it comes to Tinicum Township's Police Department, which the Chief heads.

118. In practice, the Township Board of Commissioners retains ultimate responsibility to supervise and monitor the overall operation of the Police Department, and Chief Edmiston is responsible to supervise and monitor the day-to-day operations of the Department.  Each has final decision-making authority with regard to the operational conduct of the subordinate members

of the police force; each retained the authority to measure the conduct and decisions of police subordinates; each played a role in fashioning and implementing Departmental police policies, practices, procedures and customs, and often did so in consultation with one another. Each is a person whose actions may fairly be said to represent official township policy or custom.

119. Defendants Township and Board implemented several policies and/or practices that created an unreasonable risk of Constitutional violations on the part of their subordinates, including specifically, Barrowclough, Ryan and O'Neill; and, their failure to change those policies and/or practices, or employ corrective measures, is a direct cause of the unconstitutional conduct, which was inflicted upon the Plaintiff.

120. Most specifically among these practices and customs was for the Township and Edmiston to ignore the pattern and history of Constitutional abuses committed by the police officers under their supervision.

121. The existing custom and practice followed by Defendants Township Board and Edmiston was largely to ignore Constitutionally implicated complaints about the conduct of their officers; to take no action to properly facilitate the receipt of citizen complaints; to fail to compile and analyze in a reasonable

fashion and in an accurate and continuing fashion the nature of the complaints received and what officers generate them, with what frequency.

122. This deliberate indifference to the violations of citizens Constitutionally protected rights not only reinforced the justifiable belief among the citizenry that it was useless to register complaints about police misconduct and abuse, but, it created further ill-will, and even more significantly, sent a message to the members of the police force that their violations of the community's Constitutional rights would be tolerated and go unpunished, thereby encouraging further and even more serious violations and an unreasonable risk of just the sort of harms that were visited upon Plaintiff herein.

123. The institutionalization of a culture of Constitutionally abusive police misconduct within the Tinicum Township Police Department was so obvious as to be apparent to any reasonable supervisor or policymaker, including Defendants Board of Commissioners and Edmiston; and, their indifference to the risks that these customs, practices, or supervisory procedures presented was the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

124. This was no more true than with the Defendants' deliberate indifference to the need to provide its officers, including most especially, Defendants Barrowclough, Ryan and O'Neill, with more or better training with regard to

the safeguards afforded by the Fourth Amendment, including particularly the Constitutional pre-requisites to arrest and prohibitions to using excessive force.

125. Defendants Board of Commissioners and Edmiston were aware that their officers confront situations that may require the use of force, including deadly force, that such situations often involve difficult decisions on the part of officers about how much force to use, and that excessive force liability will frequently result if officers use more force than is reasonably necessary under the circumstances, or use force where none actually is required, as occurred here.

126. Defendants Board of Commissioners and Edmiston were, or should have been, aware of the numerous incidents of the excessive use of force that had been committed by members of the Department in the past, including those involving Defendants Barrowclough, Ryan and O'Neill, and failed to subject such offenders to appropriate evaluation, discipline and/or remedial training, thereby demonstrating a tolerance of past and/or ongoing police misbehavior, through knowledge and acquiescence in their subordinates' Constitutional violations.

127. The lacking supervisory practices, procedures, and/or policies, which Defendants Board of Commissioners and Edmiston were required at a

minimum to promulgate, implement, monitor and, if necessary, modify, include, *inter alia*, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating Constitutional violations; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints (lethal, formal and informal) and their respective outcomes – by name, nature of claim, and resolution and corrective action if any; procedures for the efficient, effective, objective investigations of all claims and complaints, their analysis and requiring the prompt and open imposition of disciplinary, corrective action or policy or procedural change; procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures requiring remedial training in Fourth Amendment safeguards including arrest and use of force limitations, including deadly force; procedures for identifying circumstances and the identity of officers who file unsubstantiated criminal charges; procedures for conducting both internal and external reviews of all claims of unconstitutional or otherwise unlawful police conduct; procedures

for identifying officers who are in need of remedial training; and procedures for effectively and independently, monitoring officers' drug (including steroid) or alcohol abuse (such as random testing) and for monitoring and testing officer's mental health (including anger management).

128. The existing customs within the Tinicum Township Police Department created an unreasonable risk of injury in the absence of the above-specified supervisory practices and/or policies.

129. Defendants Board of Commissioners and Edmiston were aware the risks existed because they were obvious and because they had occurred previously under their supervision.

130. Defendants Board of Commissioners and Edmiston were indifferent to the risks, given their failure to remediate them in view of the past unconstitutional consequences of those risks.

131. The underlying Constitutional violations inflicted on the Plaintiff resulted from Defendants Board of Commissioners and Edmiston's failure to properly employ the above supervisory practices and/or policies.

132. Moreover, the conduct exhibited by Defendants Barrowclough, Ryan and O'Neill on February 27, 2015 was not that of unexpected, independent, non-policymaking actors, but constituted deliberate and predictable acts of subordinates who operated with a rightly perceived impunity due to the

ongoing deliberate indifference of their supervisors and policymakers, Defendants Board of Commissioners and Edmiston, and their well-established practices, policies and customs which operated as the moving force behind what the officers thought would be an overlooked and tolerated effort to engage in what had become customary Constitutional deprivations.

133. As a result of the deficient supervision and policymaking of the Defendants, Plaintiff suffered the damages alleged herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory, and punitive damages (against the Defendants in their individual capacities only).

## **COUNT VIII**
**42 U.S.C. §1983**
**Failure to Intervene**
**Non-Supervisory**
***Against Individual Defendants***

134. The preceding paragraphs are incorporated herein by reference as though fully set forth.

135. Defendants Ryan, O'Neill and Barrowclough are liable for failing to intervene to prevent the Constitutional violations of Plaintiff's federally protected rights,

as claimed herein, by each other, or by other offenders presently unknown to Plaintiff.

136. Plaintiff's Constitutional rights were violated as alleged herein.

137. Under circumstances where a named Defendant was not the violator of a given right as alleged, he had the duty to intervene, including the duty to intervene to prevent an unlawful arrest, false imprisonment, and the use of excessive force upon Plaintiff

138. Each of the Defendants had a realistic and reasonable opportunity to intervene in as much as all Defendants were within arms-reach of the Plaintiff when he was assaulted and Tased.

139. Each of the Defendants failed to intervene.

140. Each non-intervening Defendant is liable for the harm, and hence damages, suffered by the Plaintiff, as stated herein.

141. Defendant Officers Barrowclough, Ryan and O'Neill are liable for their personal involvement in the commission of the acts complained of here.

142. Defendants, Tinicum Township, its Board of Commissioners and Chief Edmiston, are liable for the acts of Defendant Officers Barrowclough, Ryan and O'Neill pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

143. Further, the conduct exhibited by subordinate township officers and employees, Barrowclough, Ryan and O'Neill, which occurred on February 27, 2015, was not unexpected.  Neither were they the deeds of independent, non-supervisory actors.  But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, the Board of Commissioners and Edmiston, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations.

144. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and, where permitted by law, punitive damages.

## COUNT IX
## 42 U.S.C. §1983
## Civil Conspiracy
### *Against Individual Defendants*

145. The preceding paragraphs are incorporated herein by reference as though fully set forth.

146. The Defendants participated in a conspiracy to violate the Plaintiff's Constitutional rights.

147. Direct evidence of conspiracy is rarely available and therefore, the existence of a conspiracy must usually be inferred from the circumstances.

148. Those circumstances here establishing a conspiracy, are very compelling:

   a) The Defendant Officers arrived together at the room of Plaintiff;

   b) Each participated in an unconstitutional entry and seizure of the Plaintiff;

   c) Each assaulted the Plaintiff or engaged in a cover up of the assault;

   d) Each participated in the events which deliberately caused the injuries to the Plaintiff;

   e) Each arrived at an understanding of their intentions prior to their unconstitutional conduct, and each spoke together after their unconstitutional assault upon the Plaintiff to arrive at a common fabrication which would exonerate them from wrongdoing;

f) Each provided a common fabrication to those who questioned them about their acts and the injuries to Plaintiff;

g) Each colluded to prepare a common fabrication in reports and/or testimony to be presented to the Department, at the preliminary hearing, and/or at the jury trial, about their acts and the injuries to Plaintiff; and

h) All the acts undertaken by Defendant Officers were committed with obvious deliberateness and an express predisposition to injure Plaintiff, without reason or provocation; and, none of Defendant Officers' acts were inadvertent or accidental.

149. Each one of the foregoing evidences a meeting of the minds and an understanding between the Defendant Officers, which had as its successful object the deprivation of the Constitutionally protected rights of the Plaintiff.

150. These circumstances, pre-discovery, would, in and of themselves, warrant a reasonable fact finder in concluding that the Defendants, Barrowclough, Ryan and O'Neill, and others yet unknown, formed a conspiracy to deprive the Plaintiff of his Constitutionally protected rights because:

a) They formed a combination by which they, together, committed the criminal acts of trespass, assault, false arrest, false imprisonment, and perjury, false swearing and/or sworn falsification to authorities;

b) This constitutes a "conspiracy"; and

c) By being state actors who used their conspiracy to deprive the Plaintiff of his Constitutionally protected civil rights as described, each is liable for the harms inflicted upon the Plaintiff as a result of their concerted actions.

151. This conspiracy, as it applied to the Plaintiff herein, was an express or implied agreement between the Defendants and others to deprive the Plaintiff of his Constitutional rights, *inter alia*, to be free from unlawful entry and arrest; to be free from excessive use of force; to be at his liberty without unlawful confinement based upon false allegations; to freely associate; to pursue life, liberty and happiness; to receive due process unimpeded by false allegations and false swearing.

152. The Defendants were voluntary participants in the common venture, understood  the general objectives of the plan, knew it involved the likelihood of the deprivation of Constitutional rights, accepted those general objectives, and then agreed, either explicitly or implicitly, to do their part to further those objectives.

153. The Defendants then did each, either act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of Plaintiff's Constitutional rights as alleged.

154. An actual deprivation of those rights did occur to the Plaintiff resulting from the said agreement or common design, and as a foreseeable consequence thereof.

155. The Defendants, and each of them, are jointly and severally responsible for the injuries caused by their fellow co-conspirators even if, or when, their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

156. As a result of the civil conspiracy entered into and acted upon by the Defendants  and other co-conspirators, Plaintiff suffered a deprivation of his Constitutional rights, and suffered damages as stated herein.

157. Defendant Officers Barrowclough, Ryan and O'Neill are liable for their personal involvement in the commission of the acts complained of here.

158. Defendants, Tinicum Township, its Board of Commissioners and Chief Edmiston, are liable for the acts of Defendant Officers Barrowclough, Ryan and O'Neill pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

159. Further, the conduct exhibited by subordinate township officers and employees, Barrowclough, Ryan and O'Neill, which occurred on February 27, 2015, was not unexpected.  Neither were they the deeds of independent, non-

supervisory actors.  But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, the Township and its Board of Commissioners and Edmiston, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations.

160. The likelihood is that, but for the alleged acts and omissions committed by the Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and, where permitted by law, punitive damages.

## COUNT X
### 42 U.S.C. §1983
### Municipal Liability
### *Against Tinicum Township and its Board of Commissioners*

161. The preceding paragraphs are incorporated herein by reference as though fully set forth.

162. Prior to February 27, 2015, Tinicum Township and its Board of Commissioners either failed to develop appropriate policies, or developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons in Tinicum Township, which caused the aforesaid violations of Plaintiff's Constitutional rights.

163. The violations of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendant Tinicum Township, and its Board of Commissioners which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

   a) Legal cause to make a warrantless entry;

   b) Legal cause to stop, detain, arrest, and criminally charge a citizen;

   c) The use of force by police officers;

   d) The proper exercise of police powers, including, but not limited to entry upon a private premises, the making of an arrest, the use of proper force, and the bringing of criminal charges;

e) The rules, guidelines, policies, and procedures for the proper use of a Taser against an individual;

f) The monitoring of the excessive and/or otherwise improper use of Tasers by members of the Tinicum Township Police Department;

g) The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological and/or addiction problems that impaired their ability to function as officer;

h) The failure to identify and take remedial or disciplinary action against police officers who committed past misconduct or who were the subject of prior civilian or internal complaints of misconduct;

i) Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties;

j) The failure of police officers to follow established policies, procedures, directive, and instructions regarding warrantless entry into private premises, arrests, the use of force, and the institution and prosecution of criminal charges under such circumstances as presented by this case;

k) The failure to properly sanction or discipline officers, supervisors and others who are aware of and conceal and/or aid and abet violations of Constitutional rights of citizens by other Tinicum Township police

officers, including by failing to intervene when and where appropriate; and

l)  The practice among Tinicum Township police officers of instituting false charges against individuals whom the officers have subjected to Constitutional violations, including but not limited to unlawful force, with the intention of impeding citizen's redress and/or precluding such individuals from instituting civil claims.

164. It was the policy, practice and/or custom of Defendant Tinicum Township and its Board to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated and/or justified by Tinicum Township and its Board, including, but not limited to, complaints of citizens.

165. The Township and its Board of Commissioners and other policy-makers have a long-standing practice of defending police officers' civil rights abuses, even when it is apparent, by jury verdicts or otherwise, that the officers were in the wrong and, even when it would be apparent to a reasonable person that the officers' statements concerning their own conduct were not truthful; and, even when it would be equally apparent that the officers have engaged in a cover-up by participating in such things as false criminal filings, report writing and providing false testimony under oath.

166. It was also the policy, practice and/or custom of Defendant Tinicum Township and its Board to inadequately screen during the hiring/appointment process and to inadequately train and supervise its police officers and Defendant Chief, including Defendant police officers, thereby failing to protect the public from potential Constitutional violations and thereafter failing to adequately discourage further Constitutional violations on the part of its police force in general and Defendant Officers and Chief in particular.

167. Defendant Tinicum Township and its Board did not require or demand appropriate in-service training or re-training of officers who were known or suspected to have engaged in police misconduct or who were known to encourage or tolerate same.

168. Defendant Tinicum Township and its Board also did not adopt needed practices and policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein, including those practices and policies set forth under Supervisory Liability and Policymaking Liability hereinbefore.

169. It was the policy and/or custom of Defendant Tinicum Township and its Board to allow and even promote false arrests, unfounded prosecutions, the excessive use of force of their officers, and other Constitutional violations described herein.

170. As a result of the above described policies, practices and customs and failure to adopt necessary and appropriate policies and practices, police officers of Defendant Tinicum Township, including the within Defendants, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or disciplined, but would be tolerated and even encouraged.

171. The above described policies and customs, and the failure to adopt necessary and appropriate policies, to change policies when the need arose, and the need to properly enforce appropriate policies demonstrated a deliberate indifference on the part of the policymakers of Defendant Tinicum Township, which group of policymakers includes but is not limited to, Defendant Chief of Police Edmiston, and the Township Commissioners, and were the moving force behind and the cause of the violation of the Plaintiff's rights as alleged herein, as well as the claimed damages which resulted therefrom.

172. But for this deliberate indifference, the injuries, which were suffered by the Plaintiff, would, in all likelihood, not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against the Township of Tinicum and its Board of Commissioners, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal

District Court for the Eastern District of Pennsylvania, including awards for both compensatory and, where lawfully permitted, punitive damages.

## COUNT XI
### State Constitutional Violations
### *Against Individual Defendants*

173. The conduct of Defendants Barrowclough, Ryan and O'Neill, as alleged herein, was violative of the Plaintiff's rights under Article I, Section 1 and Section 8 of the Constitution of the Commonwealth of Pennsylvania guaranteeing to Plaintiff the right to Due Process and the protection of reputation, and to be free from warrantless and unreasonable entries and warrantless seizures, not predicated upon probable cause, and from the use of excessive force.

174. As a result of the Defendants' conduct, which was violative of the guarantees afforded Plaintiff under the Pennsylvania Constitution, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania and, if still undetermined by Pennsylvania's Supreme Court as a lawful basis for monetary relief, provide the injunctive relief requested hereinafter.

## COUNT XII
### Assault and Battery-State Violations
### *Against Defendants Barrowclough, Ryan and O'Neill*

175. The preceding paragraphs are incorporated herein by reference as though fully set forth.

176. Defendants Barrowclough, Ryan and O'Neill assaulted and battered Plaintiff as stated hereinbefore.

177. As a result of Defendants' assault and battery, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and, where lawfully permitted, punitive damages.

## COUNT XIII
### State Civil Conspiracy
### *Against Defendants Barrowclough, Ryan, O'Neill, Township and Does*

178. The preceding paragraphs are incorporated herein by reference as though fully set forth.

179. The Defendants conspired to engage in the tortious State claims alleged hereinbefore, including by the means detailed as a basis for the federal

conspiracy claims alleged, whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms upon the Plaintiff by their own acts or omissions or by those of fellow co-conspirators.

180. As a result of the aforesaid conspiracy engaged in by Defendants, Plaintiff suffered the damages stated herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, including awards for both compensatory and, where permitted by law, punitive damages.

## OTHER

181. Plaintiff respectfully requests a jury of twelve (12) jurors to deliberate upon the within causes of action.

182. The within case is not subject to arbitration.

183. Where permitted by law or statute, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

184. Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices to be unlawful, and enjoining their present and continued effects, and requiring the independent third party monitoring and, prescribed regular judicial review of same.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a) Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

b) Award punitive damages to Plaintiff against the individual Defendants in their individual capacities, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

c) Award reasonable attorney's fees and costs to the Plaintiff, as already incurred in the underlying legal representation, and also as may be awardable by law or statute, including especially 42 U.S.C. § 1988;

d) Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1981, 1983, and 1985 and Article I Section 1 and Article I Section 8 of the Pennsylvania Constitution; and further affirmatively requiring the

Defendant Tinicum Township and its Board to engage in appropriate remedial efforts to adopt, and enforce, policies for the Tinicum Township Police Department that are calculated and intended to preclude future conduct like that which has been engaged in by the Defendants named herein; and to appoint an independent civilian monitor to observe, and report any Constitutional violations by the Tinicum Township Police Department and/or any deficiencies in the remediations ordered by the court; and

e) Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,

Dated:  February 6, 2017

Robert E. Goldman, Esquire
PA Attorney I.D. # 25340
535 Hamilton Street, Suite 302
Allentown, PA  18101
(610) 841-3876
reg@bobgoldmanlaw.com
Attorney for Plaintiff